FILED
2021 Aug-02  AM 10:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **PAMELA SMOTHERS, as administrator** **and personal representative of the Estate** **MITCHELL WAYNE SMOTHERS JR,** **deceased.** | ) ) ) ) | |
| **Plaintiff,** | ) | **CASE NO.:** |
| **Vs.** | ) ) | |
| **ROGER CHILDERS, PREEMPTIVE** **FORENSIC HEALTH SOLUTIONS, LLC,** **WALKER COUNTY,** Fictitious Defendants A through Z, the true legal names of  whom with reasonable diligence are unknown, are those individuals, person, firm, corporation or other legal entity responsible for deliberately indifferent, wanton and/or tortuous manner failed to provide medical care with regard to Plaintiff in the acts or omissions described more fully herein; all of whose true names are otherwise unknown but will be added by amendment when ascertained, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **Plaintiff Demands Trial** **By Struck Jury** |
| **Defendants.** | ) | |

## PLAINTIFF'S COMPLAINT

**COMES NOW** the Plaintiff, Pamela Mitchell, as Administrator and Personal Representative of The Estate of Mitchell Wayne Smothers, Jr., by and through her attorneys of record and for Complaint shows unto this honorable court as follows:

## I.    Introduction

1.    On July 17, 2017, Plaintiff's decedent, Mitchell Wayne Smothers, Jr., entered into a plea agreement where he agreed to plead guilty to a misdemeanor offense of possessing a forged instrument, in the fourth degree, a check in the amount of $150.00 and was ordered to serve 12 months, split 6 months in work release with 12 months of supervised probation by the Walker County Community Corrections.

2.    On February 12, 2019, Smothers was arrested for having failed to report to his probation officer on said charge, and, on March 18, 2019, the Circuit Court revoked Smother's probation and ordered that he serve the twelve (12) month probated portion of his sentence in the Walker County Jail.

 This revocation order, placing Mitchell Smother's in the Walker County Jail, under the medical care of Defendant Childers, turned out to be Mitchell Smother's death sentence.

3.      At the time of sentencing, Smothers was forty-eight (48) years old and had a complicated medical history, that included COPD, Cirrhosis of the Liver, and Chronic Venous Insufficiency, which resulted in severe swelling in both legs, debilitating pain, recurrent cellulitis (painful bacterial infections in the fat and inner layers of the skin) and the formation of non-healing pressure wounds.

4.      Because of his poor health and complications from his recurrent cellulitis, Smothers required frequent doctor visits and intermittent hospitalizations for long stays where he received IV antibiotics and wound debridement (the removal of infected, damaged, or dead tissue so a wound can heal properly).  Due to the condition of his legs, immediately prior to being incarcerated, Smothers' doctor determined that he needed to have "venous ablation surgery", a procedure wherein a surgeon uses a laser to cauterize and close bad veins in the legs to alleviate symptoms such as swelling, achiness, fatigue, heaviness of the legs to restore his activities of daily living, and he had a procedure scheduled for the day after he had been arrested. Smothers, however, was locked up and was denied this necessary medical treatment.

5.      While serving his sentence at the Walker County Jail, Smothers suffered from

the above-described serious medical condition and, for six months, Defendant Childers deprived Smothers of necessary, life saving, medical care. As the days, weeks and months passed by, Smother's health progressively worsened. The pain from the swelling in Smothers' legs became debilitating, making him unable to walk for even short distances where he would rely on the kindness of the other inmates in his dorm to bring him his food trays.

6.     Despite having made repeated requests of the Jail Nurse/Defendant Childers, for medical care, Childers never allowed Mitchell Smothers to see a doctor. Instead, Childers acted beyond the scope of his nursing license and attempted to diagnose and treat Smothers by, among other things, administering Lasix without having a doctor examine, diagnose or prescribe treatment for Smothers.

7.     Unqualified and ill-equipped to diagnose and treat Smothers for his serious medical needs, Childers either ignored, or failed to recognize that an infection had taken hold in a non-healing wound on Smother's left lower leg and was spreading throughout his body.

8.     Because Childers deliberately denied Smothers access to necessary, life-saving medical care and treatment from a medical doctor, Smothers became septic,

and on August 2, 2019, had to be taken by ambulance to the hospital. The doctors at the hospital diagnosed Smothers with sepsis, secondary to cellulitis, a severe urinary tract infection, acute kidney injury, metabolic acidosis, and placed him on IV antibiotics.

9.      The treatment at the hospital, though, came too late. The damage to Smothers' vital organs was irreparable. Within days, Smothers' organs began to fail from the infection; and as a result, Smothers slipped into a coma and died ten days later on August 12, 2019.

10.     Plaintiff requests this honorable court find that the unconstitutional acts and omissions committed by the defendants caused the death of Mitchell Wayne Smothers and award her just damages for the violations hereunder sufficient to deter the defendants from committing such further unlawful acts and/or omission.

## II.      Jurisdiction and Venue

11.     This action arises under and is brought pursuant to United States of America Code, *42 U. S. C., Section 1983* through *Section 1988(a)* to remedy the deprivation of rights suffered by Mitchell Wayne Smothers, at the hands of the defendants, while acting under the color of state law, denying Smothers his civil rights guaranteed by

the Eighth and Fourteenth Amendments to the United States Constitution. This court

has jurisdiction over this action pursuant to *28 U. S. C. Sections 1331* and *1343*.

12.    Venue in this action is proper pursuant to *28 U. S. C. Sections 1393(b)* in that

a substantial part of the events or omissions giving rise to the plaintiff's claim

occurred in the Northern District of Alabama.

### III.    The Parties

13.    The plaintiff, Pamela Smothers, is the mother of Mitchell Wayne Smothers.

She is the duly appointed Administrator and Personal Representative of the Estate

of Mitchell Wayne Smothers, Jr., deceased, having been granted *Letters of*

*Administration* by the Judge of Probate of Walker County in case no. PC2019-158.

Pamela Smothers is a resident of Walker County, Alabama and is over the age of

nineteen (19) years.

14.    Defendant, Roger Childers (hereinafter Childers), is an individual over the age

of nineteen years who is believed to be a resident of the State of Alabama. At all

times pertinent to the complaint, Childers was the sole managing member of

Preemptive Forensic Solutions and was responsible for assessing inmates' medical

needs and coordinating care as prescribed by a licensed physician. This defendant

is being sued in his individual capacity.

15.     Defendant, Preemptive Forensic Solutions, LLC (hereinafter "Preemptive") is a domestic company organized under the laws of the State of Alabama, where at all times pertinent hereto, held a contract with Walker County, Alabama to provide inmates with comprehensive medical services at the Walker County Jail.

16.     Walker County Alabama is a political subdivision of the State of Alabama with its county seat located in the City of Jasper, Alabama.  At all times pertinent hereto, Walker County had a non-delegable duty and was obligated by state law to furnish inmates confined at the Walker County Jail with medical care.

17.     Fictitious Defendants A-Z, the true legal names of whom with reasonable diligence are unknown, are those individuals, persons, firms, corporations or other legal entity with deliberately indifference, wanton, and/or tortuous manner failed to provide medical care with regard to Plaintiff in the acts or omissions described more fully herein; all of whose true names are otherwise unknown but will be added by amendment when ascertained.

## IV.     <u>Factual Allegations Common to, and Incorporated into by Reference, Each Cause of Action</u>

18.    On or about July 27, 2017, Smothers plead guilty to the misdemeanor offense of possessing a forged instrument 4th degree, and was sentenced to 12 months, split 6 months to serve in the Walker County Community Corrections Work Release, followed by 12 months of supervised probation.

19.    Prior to Smothers completing probation, on March 9, 2019, the Walker County District Attorney's office filed a motion requesting that the court revoke Smothers' probation because Smothers allegedly failed to report to his probation officer.

20.    Smothers was never served with the district attorney's motion. As a result, Smothers failed to appear at the probation revocation hearing, on March 27, 2018, so the Walker County Circuit Court entered an order directing the Sheriff to immediately arrest Smothers' and bring him before the court.

21.    Smothers was middle aged, over-weight and had a complicated medical history, which among other conditions, included diabetes, chronic venous insufficiency, COPD, advanced chronic Hepatitis-C, Cirrhosis of the liver, recurrent cellulitis in his lower legs and non-healing pressure wounds.

22.    The chronic venous insufficiency caused excess fluid to build up under the skin of Smother's legs, which caused him to suffer in debilitating pain and compromised his ability to perform his daily living activities.[1]

23.    The excess blood and fluid leaking from his leg veins caused Smothers' skin to turn a reddish, purple color, and degrade or die from the inside-out, resulting in the formation of large open wounds, which were prone to infection and recurring cellulitis from MRSA (Methicillin Resistant Staph) bacteria that had colonized his legs.

24.    Despite being followed by medical specialists, for years Smothers required multiple hospitalizations for extended stays to treat his repeated bouts of cellulitis with IV antibiotics.

25.    Although Smothers had been treated conservatively with a diuretic and compression socks to try to reduce the accumulation of fluid in his legs, these methods proved to be ineffectual, and as a result, Smothers needed corrective venous ablative surgery.

---

[1] Chronic venous insufficiency (CVI) is a condition that occurs when the venous wall and/or valves in the leg veins are not working effectively, making it difficult for blood to return to the heart from the legs. CVI causes blood to "pool" or collect in these veins, and this pooling is called stasis.

26. On April 23, 2018, Smothers' infected legs worsened, and he was admitted to Princeton Medical Center, as an inpatient, through its emergency department where he received a three-day course of aggressive antibiotics to treat his cellulitis.

27. Following his discharge, Smothers was under a doctor's care and was followed for three months by Capstone Rural Health Care, where he was prescribed oral antibiotics to manage his infection and Lasix reduce the swelling in his legs.

28. On June 9, 2018, Smothers was under the care of Cardiology P.C., and was diagnosed with severe vasculature insufficiency in his lower legs. Smothers had follow-up visits scheduled every three months with Cardiology P.C. to monitor and assess his vasculature insufficiency.

29. In January of 2019, Smothers experienced another bout of cellulitis, which had progressed to his intestines, and he was re-admitted on or about January 10, 2019, to Princeton Medical Center.

30. Upon his admission, Smothers was diagnosed with cellulitis, peritonitis, and he had a large weeping wound on his lower left leg which measured 15x15x0.3cm.

31. Smothers remained hospitalized for six days where he underwent a regiment of aggressive IV antibiotic therapy and wound care to treat his infections.

32.    Upon being discharged from Princeton Medical Center, Smothers' open wound had not healed and he remained under a doctor's care at Princeton Baptist Wound and Bariatric Clinic.  He was also being followed and treated for his other health conditions by Family Medical Associates West, Cardiology P.C., and Birmingham Gastroenterology.

33.    On February 12, 2019, however, Walker County Sheriff Deputy, James Brown, executed the failure to appear writ entered by the Circuit Court in March of 2018, for having missed court, almost a year earlier, and arrested Smothers at his mother's, Pamela Smothers', house.

34.    Along with Smothers, Pamela Smothers told Deputy Brown that her son had serious medical problems, that he was under a doctor's care, and begged Deputy Brown not to take him to jail.  She informed Deputy Brown that Mitchell Smothers needed medical treatment; he was not fit to go to jail, and he had doctors' appointments the very next day for treatment of his legs, on February 13, 2019.

35.    Deputy Brown disregarded Pamela Smothers' and her sons concerns about his son's health, took Smothers to the Walker County Jail and locked him up.

36.     The defendants failed to take Smothers to his doctor's appointment that had been scheduled for next day, February 13, 2019, or reschedule his appointments, and failed to properly care for Smother's legs.

37.     On February 26, 2019, after allowing Smothers to sit in jail and suffer for two weeks, missing his doctor's appointments for much needed medical care and attention, the jailors took Smothers before the Circuit Court of Walker County, where the judge revoked his probation and ordered Smothers to serve the remainder of his 12-month sentence in the Walker County Jail.

38.     During the entire time that Smothers was locked up in the Walker County Jail, Walker County had an obligation to fund and pay for the provision of medical care to inmates incarcerated in the Walker County Jail.

39.     Because it was costly for Walker County to send inmates to the local hospital emergency department or to their treating physicians, to cut costs, save money, and minimize expenses, for decades, Walker County has contracted with Preemptive Health Forensic Health Solutions, LLC, which was the lowest cost provider of medical services it could find.

40.    At the time of Smothers' incarceration, Walker County had renewed its contract with Preemptive Forensic Solutions LLC to provide comprehensive medical services to inmates incarcerated in the Walker County Jail.

41.    In exchange for supposedly providing necessary medical care for inmates in the Walker County Jail, Defendant Childers, through his company, Preemptive Forensic Solutions LLC, was paid by Walker County, in excess of $17,500 per month.

42.    Pursuant to the terms of their agreement, Preemptive Forensic Solutions was supposed to provide comprehensive medical services to inmates 7 days a week, 24 hours a day which included, among other things, hiring and staffing the jail with a medical team consisting of nurses, doctors, and an advanced practicing nurse to run a full service health clinic at least one day a week, or more often as needed, where inmates were to be seen and treated by a licensed and credentialed medical providers.

43.    Preemptive Forensic Solutions LLC is a solely owned and managed by Roger Childers.  The less money Preemptive spent on providing inmates with medical care inside the jail, the more money its owner, Childers, got to keep for himself.

44.    Roger Childers holds a registered nursing license by the State of Alabama and at times would work for Preemptive at the Walker County Jail as a nurse.

45.    Roger Childers is not a physician; he does not hold an advanced practicing nursing license, and he is not a licensed and credentialed medical provider.

46.    Although Roger Childers has a doctorate degree in business administration, he holds himself out to the inmates and other healthcare providers as "Dr. Childers" and has done so for many years.

47.    As a registered nurse, under Alabama nursing rules, the scope of Roger Childers practice is limited to performing nursing assessments and administering nursing care as prescribed by a licensed medical provider.

48.    Childers did not follow any established written protocols or procedures to perform his nursing assessments of inmates at the jail.

49.    Unless the correctional officers called for an ambulance to take inmates directly to the hospital, Childers diagnosed sick inmates, and solely determined the course of treatment for sick inmates and whether sick inmates were allowed to be seen and treated by a licensed medical provider (a licensed doctor, or nurse practitioner.)

50.    To maximize his personal profits, it was Childers' custom and practice to deny inmates' access to medical care by failing to properly staff the jail with nurses 24 hours a day/ seven days a week.

51.    To maximize his personal profits, it was Childers custom and practice to deny inmates' access to medical care by routinely failing or refusing to schedule a licensed medical provider (a doctor or a nurse practitioner) to conduct a health clinic at least once a week at the jail to evaluate and treat inmates.

52.    To maximize his personal profits and to keep Walker County happy and thus keep his contract with Walker County, it was Childers custom and practice to deny inmates' access to medical care, by routinely determining inmates' medical conditions were not serious enough to be evaluated or treated by a licensed medical provider; or, by not adequately monitoring inmates with health problems; or, in violation of Alabama nursing regulations, Nurse Childers would attempt to diagnose and treat patients himself.

53.    It was Childers' routine custom and practice to fail to document his nursing assessments of inmates, thus allowing him to avoid outside scrutiny.

54.    It was Childers' routine custom and practice to fail to keep comprehensive medical record of the patients seen or treated by Preemptive.

55.    In September of 2017, with a failed ballot measure to raise County Sales' Tax by 1%, Walker County faced possible bankruptcy.

56.    It is well known that inmates in the Walker County Jail had been forced to suffer, due to lack of necessary medical care, sometimes dying in the jail or soon afterwards, as a result of lack of medical care and treatment while having been incarcerated at the jail.

57.    When Sherriff Nick Smith took office in January of 2019, he was aware that Roger Childers and Preemptive Forensic Solutions LLC were depriving Walker County Jail inmates of necessary medical care by attempting, as a nurse, to diagnose and treat sick inmates and to provide medical care for inmates that he was not qualified to provide because he was not a doctor, and by not properly staffing the jail, monitoring and addressing inmate health problems within the jail. As a result of this knowledge, since taking office, Sheriff Smith has pleaded with the County to get rid of Childers and not renew his contract because of the dangerous condition this created. Not until after Smother's death, Sheriff Smith's pleas fell on deaf ears.

58.    At the time of and during Smother's incarceration starting on February 12, 2019, Walker County was on notice that Childers and Preemptive were depriving inmates of necessary medical treatment for their serious medical needs from other inmate complaints, prior legal actions, insurance audits, Sheriff Smith's ignored pleas, and in various other ways.

59.    Despite Walker County having notice that Childers/Preemptive were depriving inmates of necessary medical care for their serious medical needs, in order to avoid having to pay more money for necessary inmate medical care, Walker County refused to remedy the situation by removing Childers.

60.    Despite being on notice, Walker County insisted on, and continued to contract with Childers and Preemptive, turning a blind eye to the lack of care that Childers has routinely and habitually provided inmates in the Walker County Jail, which led to needless and avoidable suffering and death, including the suffering and death of Mitchell Wayne Smothers.

61.    As a result of Walker County's refusal to remove Childers, or hire adequate health care providers to care for jail inmates, and because of the continued lack of proper inmate medical care that it has spurned, rather than to continue to subject inmates to suffer for lack of adequate medical care, and subject himself and his employees to needless liability, Sherriff Smith was forced to implement a policy requiring that his jailors call an ambulance for any inmate suffering with a medical problem to have them taken directly to the hospital emergency room to be diagnosed and treated by a doctor.

62.    Additionally, Sheriff Smith instructed Nurse Childers that Childers was to notify him directly, each day, of any inmate that was sick in the jail so that he could make sure that the inmate was diagnosed and treated by a doctor. Put simply, upon taking office, Sheriff Smith made it clear that he would not condone sick inmates suffering and dying in the jail due to lack of necessary medical care from Childers and Preemptive Forensic Health Solutions, LLC.

63.    Upset about the  cost that the Sheriff's new policy was costing the county, and the escalating medical costs, Walker County insisted that the Sheriff withdraw his policy and resume having Childers determine whether inmates were allowed to see a doctor and, warned the Sheriff that if increased inmate health care expenditures continued, they would have to pay the medical bills but they would cut the jail budget in other areas in order to attempt to make up the difference, which in turn, would force the Sheriff to lay off employees due to insufficient revenues, in his already understaffed department.

64.    Despite this pressure, Sheriff Smith refused to comply with the County's demand, and has continued with his policy requiring that any sick inmate be taken by ambulance to the local hospital to be diagnosed and treated by a doctor, and that

Nurse Childers notify him daily of any sick inmate incarcerated in the Walker County Jail.

65.    Unfortunately, for the Smothers' family, the Sherriff's new polices were ignored by Childers, and instituted too late to save Mitchell Smother's life.

66.    Despite the Sheriff's directive to Childers that Childers notify him daily of any sick inmate in the jail, Childers went for months without notifying the Sheriff that Mitchell Wayne Smothers was sick in the jail.

67.    Although Smothers had been in the Walker County Jail for more than six months, despite the Sheriff's direction that Childers inform him daily of any inmate that was sick in the jail, Childers did not inform the Sheriff of Smothers' condition and Sheriff Smith did not discover that Smothers had been in the Walker County Jail sick until August 2, 2019, the day that Smothers was rushed to the hospital emergency room, dying.

68.    While at the Walker County Jail, due to lack of adequate and necessary medical care and treatment, caused by Childers' quest to maximize his profits and Walker County's quest to minimize its inmate medical expenses, Smothers' fragile health deteriorated.

69.    Jails, which are known to be a breeding ground for bacteria such as MRSA and especially so for inmates with open wounds, it was only a matter of time that Smothers' leg became infected and swollen, causing him excruciating pain, such that he could barely pull his pants over his legs or walk.

70.    Smothers had to rely on the kindness of other inmates to bring him his food trays and to help him move about.

71.    Smothers developed cellulitis, a potentially serious bacterial skin infection where the affected skin appears swollen and red and is typically painful and warm to the touch, on his left lower leg.  For months, his leg appeared purple and bruised. The skin on Smothers' leg burst open and began bleeding, oozing, appeared infected, and lasted for months.

72.    Smothers complained repeatedly about his legs and his illnesses to the jailers, Roger Childers, and the other nurses working for Preemptive.

73.    Childers, playing the role of nurse and doctor, diagnosed Smothers and administered Lasix to Smothers without having documented any nursing assessment.

74.    Childers, playing the role of nurse and doctor, diagnosed and administered Lasix without Smothers having been medically evaluated by any licensed and qualified medical provider.

75.    Childers, playing the role of nurse and doctor, diagnosed and administered Lasix without a current doctor's order.

76.    Childers, playing the role of nurse and doctor, diagnosed and administered Lasix without having fully assessed Smothers' medical history, chief complaint, and without having obtained further subjective and objective measures to evaluate Smothers' health.

77.    Childers operated outside the scope of nursing practice by having diagnosed Smothers medical condition and administered a controlled medication without referring Smothers to a licensed and qualified provider, that is, a doctor or nurse practitioner, to perform a medical evaluation on Smothers.

78.    Childers operated outside the scope of nursing practice and withheld necessary medical treatment by a licensed and qualified medical provider to save himself money and maximize his personal profits, while at the same time save the county money on inmate medical expenses.

79.     Even though Smothers repeatedly complained to Childers and the other nurses who worked for Preemptive, he was deprived of necessary medical treatment and care, and Smothers' swollen and infected legs continued to worsen.

80.     When Childers would assess Smothers, he would sometimes keep Smothers overnight in booking, give him Lasix, and possibly photograph his legs, but Childers never allowed Smothers to be seen or treated by a doctor or a nurse practitioner.

81.     Smothers repeatedly complained to Childers and, by June 29, 2019, Childers had seen Smothers on at least 12 previous occasions.

82.     However, there are no nursing records of these 12 visits. Instead, on each of these occasions, Childers failed to properly assess Smothers, document his assessments, and failed to notify a qualified licensed medical provider of Smothers serious medical condition or worsening health.

83.     Additionally, despite these more than 12 visits by Smothers, Childers never reported to Sheriff Smith that Smothers was sick in the jail.

84.     As his conditioned worsened, Smothers began to notice that he was bleeding in his urine and he was once again taken to booking for treatment by Nurse Childers.

85.     Childers held Smothers in booking overnight and gave him Lasix, but Childers never allowed Smothers to be evaluated or treated by a qualified licensed

medical provider to address the infection ravaging his body and the urine in his blood.

86.    Childers knew that having a licensed and credentialed medical provider, i.e., a doctor or nurse practitioner, available at the jail to medically assess, diagnose, and treat Smothers would cost his company more money and eat into his own personal profits.

87.    Childers also knew that having Smothers sent to the hospital would cost the county additional and likely substantial medical expenses.

88.    As a result of Childers' failure and refusal to allow or direct that Smothers be evaluated or treated by a licensed and credentialed medical provider to receive the necessary treatment for his illness, the infection in Smothers' leg spread throughout his body, and Smothers became sicker and sicker.

89.    By August 2, 2019, 12 days prior to his release date, Smothers was bedridden, in unbearable diffuse pain throughout his body and was literally screaming for help.

90.    Concerned Smothers might be dying, and not wanting Smothers to die in the Walker County Jail, the jailor in charge called an ambulance and had Smothers taken to Walker Brookwood Baptist Hospital emergency room.

91.     At the Hospital, Smothers was diagnosed with a large weeping wound on his leg, sepsis secondary to cellulitis, a significant urinary tract infection with blood present, an acute kidney injury, and metabolic acidosis.

92.     Smothers was treated with aggressive antibiotics, but the damage that the infection had caused was too extensive and his health continued to decline, spiraling down, all because of Childers' desire to maximize his profits and the county's desire to minimize its cost.

93.     Smothers was too sick to return to Walker County Jail, and on August 6, 2021, Childers arranged to have him transferred, by ambulance to the Alabama Department of Corrections Kilby Correctional Facility, in Montgomery, Alabama, where doctors there immediately transferred Smothers to Jackson Hospital.

94.     Upon his arrival at Jackson Hospital, Smothers' was critically-ill; he was hypoxic, and had to be placed on a ventilator.

95.     Smothers was diagnosed with renal failure, liver disease, sepsis, acute respiratory failure, encephalopathy, and necrotizing fasciitis on his lower left leg.

96.     Although Smothers was treated with aggressive supportive care and IV antibiotics, he was unable to regain consciousness.  He slipped into a coma, and on August 12, 2019, Smothers succumbed to his death.

### V.    First Cause of Action  - Against Defendant Roger Childers and Fictitious Defendants

### FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

97.    Plaintiff hereby incorporates by reference counts one (1) through ninety-six (96) of the proceeding paragraphs as if fully set forth herein.

98.    The Plaintiff suffered from serious medical condition.

99.    Defendant Childers had subjective knowledge of Smothers serious medical condition through his own observations, discussions with Smothers and conversations with staff working at the Walker County Jail.

101.    Defendant Childers, while acting under color of state law and with deliberate indifference failed to properly assess, document, and refer Smothers' to a licensed medical provider and thus deprived Smothers with necessary medical care for his serious medical needs.

102.    Defendant Childers while acting under color of state law and with deliberate indifference failed to coordinate Smothers' medical care with his outside treating physicians for Smothers to receive necessary doctor prescribed medical care for his serious medical needs.

103.    Defendant Childers while acting under color of state law and with deliberate indifference acted outside of his scope of practice as a registered nurse by,

attempting to diagnose and treat Smothers serious medical needs and without a doctor's order administered an (ineffectual) controlled medication.

104.   Defendant Childers, while acting under color of state law and with deliberate indifference, acted outside of his scope of practice as a registered nurse by having misdiagnosed Smothers serious medical needs and without a doctor's order administered an ineffectual controlled medication.

105.   As a direct and proximate result of the acts or omissions of defendant Childers', Smothers was denied access to necessary medical care which caused him to suffer unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

106.   While acting under the color of state law within the meaning prescribed by 42 U.S.C. § 1983, defendant Childers, deprived Plaintiff of his right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983, and 1988.

107.  The plaintiff claims damages against Defendants for said constitutional violations as prayed for below in the "General Prayer for Relief" which is herein incorporated by reference.

## VI.  Second Cause of Action  - Against Defendant Preemptive Forensic Health Solutions, LLC

## FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

108.   Plaintiff hereby incorporates by reference counts one (1) through ninety-seven (97) of the proceeding paragraphs as if fully set forth herein.

109.   Defendant Childers was the principal directing officer and thus a policymaker for Preemptive Forensic Health Solutions, LLC.

110.   Smothers suffered from a serious medical condition that required medical care and treatment which was ignored because of the customs and practices of Defendant Preemptive.

111.   With deliberate indifference to the serious medical needs of inmates, such as Smothers who required medical attention, Preemptive failed to implement adequate policies, procedures, customs or practices for providing inmates such as Smothers with life-saving medical care.

112.   Alternatively, with deliberate indifference to the serious medical needs of inmates, such as Smothers, who required medical attention, Preemptive adopted a custom or practice that created a dangerous condition of confinement of withholding necessary medical treatment for non-medical purposes and to maximize profits.

113.   Preemptive knew the custom or practice was widespread and was on notice that the above-described customs and policies regarding the denial of access to medical care was harmful to the health of inmates, such as Smothers, and caused unnecessary pain and suffering.

114.   Defendant had such knowledge from prisoner complaints, inmate deaths, communications with the jail, from their own observations, common sense, and in other various ways.

115.   Preemptive's wrongful and conduct, as complained of above, and specifically in failing to provide, with deliberate indifference, the plaintiff medical attention for his serious medical needs, is reflective of the existence of a pattern and practice over a s substantial period of time, of constitutional violations which were obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

116.   Despite being were aware of those violations, defendant Preemptive failed to take corrective action to provide inmates with access to necessary medical care.

117.   That at all times complained of herein, wherein the defendant Preemptive acted or failed to act to provide the plaintiff medical attention for his serious medical needs, the defendants were acting under color of law and pursuant to the customs, policies and practices of Preemptive and further that said policies or practices

constituted deliberate indifference to the plaintiff's constitutional rights and cruel and unusual punishment, in violation of the plaintiff's right to medical treatment for his serious medical needs.

118.   As a direct result of Preemptive aforementioned wrongful actions, that is, failure to provide, with deliberate indifference, the plaintiff medical care for his serious medical needs, the plaintiff suffered unnecessary and wanton infliction of pain, suffering, anguish, and distress that culminated in his death.

119.   As a direct and proximate result of defendants' actions, Plaintiff was deprived of his right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983, and 1988.

120.   The plaintiff claims damages against Defendant for said constitutional violations as prayed for below in the "General Prayer for Relief" which is herein incorporated by reference.

## VII.   Third Cause of Action  - Against Defendant Walker County, Alabama §1983 FAILURE TO FUND

121.   Plaintiff hereby incorporates by reference counts one (1) through ninety-six (96) of the proceeding paragraphs as if fully set forth herein

122.   Pursuant to state law, Walker County has a duty to pay for medical care provided to inmates.

123.   To minimize costs, Walker County purposefully entered into or continued a contract with Preemptive Forensic Solutions LLC because it was the least expensive provider of medical services to jail inmates.

124.   Walker County had subjective knowledge that the care being provided to inmates by Preemptive was substandard, that its owner/manager Childers was practicing outside his scope of practice as a registered nurse, was not fulfilling the terms of the contract, and was depriving inmates of necessary medical treatment for their serious medical needs from other inmate complaints, prior legal actions, insurance audits, complaints, conversations with the Sheriff and in various other ways, which had caused needless suffering and death.

125.   Despite Walker County knowing Childers/Preemptive were depriving inmates of necessary medical care for their serious medical needs, Walker County renewed or continued Preemptive's contract to avoid having to pay more money for inmate medical care.

126.   Walker County was deliberately indifferent to inmates need for health care and acted in an objectively unreasonable manner by prioritizing expenses over care

and failed to contract with another provider who would not deprive inmates of necessary medical care.

127.   As a matter of custom and practice, Walker County hired Childers to provide inmate medical cares despite knowing that he was failing to provide necessary medical care for inmates in the jail, and thus has habitually placed its desire to minimize inmate medical cost, over its duty to provide funds necessary to provide inmates constitutionally mandated medical care.

128.  As a direct and proximate result of defendants' actions, Plaintiff was deprived of his right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983 and1988.

129.  The plaintiff claims damages against Defendant for said constitutional violations as prayed for below in the "General Prayer for Relief" which is herein incorporated by reference.

### VIII. General Prayer for Relief Applicable to all Counts:

**WHEREFORE, PREMISES CONSIDERED**, the plaintiff prays for the following relief against all defendants, separately and severally:

A.    Award him compensatory and punitive damages.

B.      Reasonable attorney's fees, court cost and expenses; and

C.      Such other, further relief as appears reasonable and just.

Respectfully submitted,


/s/ Charles C. Tatum, Jr._____
Charles C. Tatum, Jr. (TAT009)
Ctatum7@aol.com
/s/Seth L. Diamond_____
Seth L. Diamond (DIA009)
sethdiamond@sethdiamondlaw.com
Charles C. Tatum, Jr. P.C.
105 19TH Street West
Jasper, AL 35501
Ph: (205) 387-0708
Fax: (205) 265-2920


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

**SERVE DEFENDANTS VIA CERTIFIED MAIL AT**

**Preemptive Forensic Health Solutions, LLC**
2001 2nd Ave
Jasper, AL 35501

**Roger Childers**
2001 2nd Ave
Jasper, AL 35501

**Walker County, Alabama**
1801 3rd Ave #113
Jasper, AL 35501