UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| PAMELA SMOTHERS, as administrator and personal representative of the Estate of MITCHELL WAYNE SMOTHERS, JR., deceased,<br><br>    Plaintiff,<br><br>v.<br><br>ROGER CHILDERS, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 6:21-cv-01057-RDP-SGC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

This matter has been referred to the undersigned magistrate judge to address a discovery dispute between the plaintiff, Pamela Smothers, as administrator and personal representative of the Estate of Mitchell Wayne Smothers, Jr., deceased,[1] and two of the defendants, Roger Childers and Preemptive Forensic Health Solutions, LLC ("PFHS"). (Docs. 51, 52, 61, 62, 63, 64, 68).[2] For the reasons stated below, the undersigned recommends the court permit the plaintiff to obtain the requested discovery regarding PFHS's financial records for 2018-2021.

---

[1] The undersigned will refer to Pamela Smothers as the plaintiff and Mitchell Wayne Smothers, Jr., as Mr. Smothers.

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I. Allegations of the Amended Complaint

The plaintiff alleges PFHS contracted with Walker County to provide medical services (from licensed and credentialed medical providers) to inmates of the county jail in exchange for $17,500/month. (Doc. 3 at 13). However, Childers (the sole managing member of PFHS) and PFHS intentionally refused to retain a doctor or nurse practitioner to work at the jail because it would reduce the company's profits. (Doc. 3 at 23).

Childers, who holds a registered nursing license, held himself out to inmates as "Dr. Childers." (Doc. 3 at 14). Childers has a doctorate in business administration, but he is not a physician or a licensed/credentialed medical provider. (Doc. 3 at 14). Nevertheless, he diagnosed inmates, determined their course of treatment, and decided whether they would be permitted to visit a licensed medical provider. (Doc. 3 at 14). "To maximize his personal profits, it was Childers' custom and practice to deny inmates' access to medical care by" (1) failing to properly staff the jail, (2) failing to schedule a licensed medical provider to conduct at least a weekly health clinic at the jail, (3) intentionally deciding inmates' medical needs were not serious enough to require treatment by a licensed medical provider, and (4) diagnosing and treating patients himself. (Doc. 3 at 14-15). Sheriff Nick Smith knew Childers and PFHS provided inadequate medical care to inmates, and he pleaded with Walker County to terminate its contract with

Childers and PFHS. (Doc. 3 at 16). Sherriff Smith then implemented a policy requiring jailers to call an ambulance for inmates with medical needs so they could be diagnosed and treated by a doctor. (Doc. 3 at 17). Because this policy increased costs, Walker County insisted Sheriff Smith withdraw the policy. (Doc. 3 at 18). Sherriff Smith then directed Childers to directly notify him daily about any sick inmate. (Doc. 3 at 18).

Mr. Smothers was arrested in February 2019 for failing to report to his probation officer. (Doc. 3 at 2). The following month, his probation was revoked, and he was ordered to serve 12 months in the Walker County Jail. (*Id.*). At that time, Mr. Smothers was 48 years old with a complicated medical history that included COPD, cirrhosis of the liver, and chronic venous insufficiency. (*Id.* at 3). This caused, among other issues, recurrent cellulitis, a painful bacterial infection of the skin. (*Id.*). Mr. Smothers required frequent doctor visits and intermittent hospitalizations to receive IV antibiotics and wound debridement. (*Id.*). Just prior to his incarceration, Mr. Smothers's doctor determined he needed a venous ablation surgery to cauterize bad veins in his legs, and that surgery had been scheduled for the day after Mr. Smothers was arrested. (*Id.*). Because of his arrest, however, the surgery did not occur. (*Id.*).

While incarcerated, Mr. Smothers was not provided the necessary medical care. (*Id.* at 4). His legs swelled painfully and prevented him from walking even

for short distances. (*Id.*). Although he repeatedly requested medical care from the jail nurse and Childers, he was never permitted to see a doctor. (*Id.*). Instead, Childers treated Mr. Smothers without having a doctor examine, diagnose, or treat him. (*Id.*). Childers either ignored or failed to recognize that a wound on Mr. Smother's lower left leg had become infected and the infection was spreading throughout Mr. Smothers's body. (*Id.*). Mr. Smothers became septic and was taken by ambulance to a hospital on August 2, 2019. (*Id.* at 4-5). At the hospital, doctors diagnosed Mr. Smothers with sepsis secondary to cellulitis, a severe urinary tract infection, acute kidney injury, and metabolic acidosis. (*Id.* at 5). Although doctors attempted to treat him with IV antibiotics, Mr. Smothers's organs began to fail from the infection. (*Id.*). He became comatose, and on August 12, 2019, Mr. Smothers died. (*Id.*).

The plaintiff filed this action in August 2021 and shortly thereafter filed an amended complaint asserting claims under 42 U.S.C. § 1983 for failure to provide medical care and failure to fund, in violation of the Eighth and Fourteenth Amendments,[3] as well as claims under Alabama state law for wrongful death.

---

[3] When brought by a convicted prisoner, a claim of deliberate indifference to serious medical needs proceeds under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). Pretrial detainees, however, proceed under the Due Process Clause of the Fourteenth Amendment. *See id*. Because Mr. Smothers was a convicted prisoner at the time of the events alleged in the complaint, the plaintiff's claims arise under the Eighth Amendment; however, because the minimum standard for providing medical care to a pretrial detainee is identical to that required by the Eighth Amendment for a convicted prisoner, the plaintiff's claims can be analyzed using law relating to either amendment. *Id.*

(Docs. 1, 3). The plaintiff named as defendants PFHS, Childers, and Walker County, Alabama.

## II. Discovery Dispute

In December 2023, PFHS notified the court of a discovery dispute. (Doc. 51). In April 2022, the plaintiff requested PFHS and Childers produce "any and all profits and loss statements, accounting records, budgets, federal and state income tax records for PFHS from January 1, 2009, through and including December 31, 2019." (Doc. 51 at 1-2). PFHS objected on June 23, 2022, contending the request was overly broad, not related to the plaintiff's claims against PFHS, and beyond the scope of discovery permitted by the Alabama Medical Liability Act ("AMLA"), Ala. Code § 6-5-551. (*Id.* at 2). When Childers responded on August 31, 2023, he referred the plaintiff to PFHS's prior response. (Doc. 52 at 1-2).

On December 5, 2023, PFHS supplemented its responses to the plaintiff's requests for production, producing redacted 1099s for individuals who provided inmate services for PFHS while Mr. Smothers was incarcerated. (Doc. 51 at 3). Nine days later, PFHS produced copies of checks from PFHS to individuals who provided services to Walker County Jail inmates while Mr. Smothers was incarcerated. (*Id.*). Shortly thereafter, PFHS produced bank statements reflecting direct deposits made to those individuals while Mr. Smothers was incarcerated. (*Id.*).

Sometime in December 2023, the parties notified the court of a discovery dispute, and the court held a telephone conference. (Doc. 53). Following that conference, the court ordered PFHS and Childers to produce "relevant financial records," defined as checks and 1099 forms for medical care providers at the Walker County jail dating back three years prior to the filing of this action. (Doc. 53). The defendants were not permitted to redact wage and financial information, but they could redact personal identifying information or other information not relevant to this case. (*Id.*).[4]

The plaintiff now argues the documents the defendants produced are inadequate to determine the defendants' relative wealth and subjective greed. (Doc. 62 at 2). She also contends the defendants produced incomplete and heavily redacted bank statements. (*Id.* at 3). According to the plaintiff's expert, she requires the following documents to fully analyze the defendants' finances: (1) complete and unredacted bank account statements, along with any corresponding checks, images, and media, belonging to PFHS from 2018-2021, (2) any as-yet unproduced 1099s issued by PFHS from 2018-2021, (3) any and all W-2s, W-3s, and quarterly and annual payroll tax records, and (4) PFHS's complete and unredacted federal and state income tax returns from 2018-2021. (Doc. 62-1).

---

[4] PFHS asserts the court denied the plaintiff's request for all other financial and tax records, but the court's written order is silent as to these records. (Doc. 53).

**III. Analysis**

The defendants contend they should not be required to produce tax documents because the AMLA prohibits discovery concerning "other acts or omissions."[5] (Doc. 51 at 5). First, they have not cited any authority extending Alabama's limitation on discovery to the plaintiff's federal § 1983 claim.[6] Second, the Alabama Supreme Court has held the AMLA does not prohibit all discovery that is not directly related to the treatment of the plaintiff. In *Ex parte Huntsville Emergency Medical Services, Inc.*, the plaintiff alleged her late husband died after being transferred from Huntsville Hospital to UAB Hospital because of events occurring during the ambulance transport. 372 So. 3d 538 (Ala. 2022). She sought discovery about the prior conduct and employment record of Jacob Steele, an employee of the transport company, arguing it was related to her claim that the transport company wrongfully hired, supervised, and/or trained him. The defendants objected, arguing she could discover only information in Steele's employment record relating to his care of her late husband. The Court permitted the discovery, reasoning:

> Section 6-5-551 permits discovery related to acts or omissions specifically alleged in the complaint, but it prohibits discovery "with

---

[5] While the plaintiff responds to the defendants' arguments on substantive grounds, she also argues the defendants' objections are untimely and therefore waived. (Doc. 52 at 2). Because the undersigned concludes the defendants should be required to produce the requested documents on substantive grounds, she has not addressed the plaintiff's waiver argument.

[6] The cases cited by the defendants involve the AMLA's pleading requirements.

7

> regard to any other act or omission" not properly alleged. Thus, in an action involving negligent or wanton hiring, training, supervision, or retention, § 6-5-551 does not permit discovery of <u>any</u> acts or omissions of employees who are identified in the complaint. Rather, discovery is permissible as to only those acts or omissions that (1) are specifically and factually described in the plaintiff's complaint and (2) are relevant to the plaintiff's claim.

*Id.* at 546. Because the plaintiff's complaint included specific and detailed allegations about Steele's prior acts and omissions, as well as the defendant's knowledge of those acts and omissions, the Court found the AMLA did not prevent her from discovering those records simply because they might relate to care of other patients.

Here, the plaintiff's complaint includes numerous and detailed allegations about the defendants' alleged profit motive in understaffing the jail and in refusing to properly treat Mr. Smothers. The discovery they seek relates to those specific allegations. As in *Ex parte Hunstville Emergency Medical Services,* the AMLA does not prohibit the requested discovery simply because it does not directly relate to Mr. Smothers's care.

PFHS also objects to providing the tax returns because, it argues, its financial records are not reasonably calculated to lead to the discovery of evidence as to whether PFHS provided reasonable care to Mr. Smothers or whether he was given his constitutional right to access medical care. The plaintiff responds that the information is "arguably relevant" (the Eleventh Circuit's standard for producing

tax and financial documents) because she alleges PFHS and Childers deliberately withheld care from Mr. Smothers "out of sheer greed." The plaintiff contends she needs this information to demonstrate PFHS's and Childers's motive in denying care to Mr. Smothers.

A district court has discretion to rule on discovery disputes, and its ruling will not be disturbed on appeal unless it has made a clear error of judgment or applied the wrong legal standard and that ruling results in substantial harm to the party opposing the discovery. *See Marbury v. Warden*, No. 22-10916, 2022 WL 17175549 (11th Cir. Nov. 23, 2022). Federal Rule of Civil Procedure 26(b)(1) permits parties to obtain discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

In the context of discovery, "relevance" is

> construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. And since the Federal Rules strongly favor full discovery whenever possible, a civil litigant is generally entitled to any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence.

*See Marbury*, 2022 WL 17175549 (internal citations and quotations omitted).

The plaintiff seeks to impose both personal and supervisory liability on Childers and PFHS in her § 1983 claim. In the Eleventh Circuit, the standard by which a supervisor is held individually liable for the actions of a subordinate is "extremely rigorous." *Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). "It is well established in this Circuit that 'supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1297 (11th Cir. 2023) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), in turn quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (quoting *Cottone*, 326 F.3d at 1360). A plaintiff can meet the "extremely rigorous challenge" by demonstrating (1) a history of widespread abuse put the supervisor on notice of the need to correct the constitutional deprivation; (2) the supervisor's custom or policy resulted in deliberate indifference to the plaintiff's constitutional rights; or (3) facts to support an inference that the supervisor directed subordinates

to act unlawfully or that the supervisor knew the subordinates would act unlawfully but failed to stop them from doing so. *See id.* at 1298.

Here, the plaintiff alleges PFHS deliberately understaffed the medical needs of the jail, which could be described as a custom or policy, to maximize profits. It is not entirely clear whether a defendant's intent in implementing a given custom is legally relevant to the Eighth Amendment analysis; however, given the "extremely rigorous challenge" the plaintiff faces on this claim, as well as the broad nature of discovery and the seriousness of the claims in this matter, the undersigned recommends the plaintiff be permitted discovery to ascertain whether profit motivated PFHS's staffing decisions or policies regarding what care Mr. Smothers could receive.

The plaintiff also alleges Childers was deliberately indifferent to Mr. Smothers's serious medical needs. To prove this claim, the plaintiff must demonstrate Childers (1) actually knew of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than either mere or gross negligence. *See Wade v. McDade*, 67 F.4th 1363, 1371 (11th Cir.), *reh'g en banc granted, opinion vacated sub nom. Wade v. Georgia Corr. Health, LLC*, 83 F.4th 1332 (11th Cir. 2023). *Wade* has since been vacated pending a rehearing *en banc*. Writing for the panel, however, Judge Newsom observed:

> For more than 25 years now, our case law regarding a deliberate-indifference claim's mens rea element has been hopelessly confused,

> resulting in what we'll charitably call a "mess." We've tried to clean up that mess at least twice, but seemingly to no avail, as panels continue to flip-flop between two competing formulations: "more than *mere* negligence" and "more than *gross* negligence."

*Id*. Judge Newsom concluded the panel was bound by *Townsend v. Jefferson County*, 601 F.3d 1152, 1153 (11th Cir. 2010), in which the 11th Circuit expressly adopted the "more than gross negligence" standard. *Id.* at 1372. That standard was later described as "'the equivalent of recklessly disregarding' a substantial risk of serious harm to the inmate." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490–91 (11th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Given the current uncertainty in the case law, the plaintiff must prepare to prove Childers acted with more than gross negligence in treating Mr. Smothers. As both the sole managing member of PFHS and the medical professional treating Mr. Smothers, Childers's alleged profit motive could reasonably bear on a jury's determination regarding whether the defendants acted with more than gross negligence.

Further, the plaintiff has requested punitive damages. (Doc. 3 at 38). "[I]t is well-established that generally before an award of punitive damages is authorized in a civil rights action the jury must find, and the evidence must support its decision, that the defendant was motivated by an evil motive or intent, or there must be reckless or callous indifference to federally protected rights." *Riley v. Camp*, 130 F.3d 958, 980 (11th Cir. 1997) (internal citations and quotations omitted). The plaintiff seeks to demonstrate that greed factored into the

defendants' medical decisions. Assuming the evidence the plaintiff seeks supports her theory, a jury could decide that in the context of these facts, the defendants' alleged desire to maximize profits is an evil motive or intent or rises to the level of a reckless or callous indifference to Mr. Smothers's federally protected rights.

## IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court permit the plaintiff to obtain the requested discovery regarding PFHS's financial records for 2018-2021.

## V. Notice of Right to Object

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), F<small>ED</small>. R. C<small>IV</small>. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal, except for plain error. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

**DONE** this 25th day of April, 2024.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE